**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DeMarcus Thompson, #775640,

<div style="margin-left:2em">Petitioner,  Case No. 13-cv-15208<br>Hon. Judith E. Levy</div>

v.

Lori Gidley,

<div style="margin-left:2em">Respondent.</div>

_____/

## OPINION & ORDER DENYING THE HABEAS PETITION, DENYING A CERTIFICATE OF APPEALABILITY, & DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Michigan prisoner DeMarcus Thompson ("Petitioner") has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of carjacking, MICH. COMP. LAWS § 750.529a, attempting to disarm a peace officer, MICH. COMP. LAWS § 750.530, two counts of assaulting, resisting, obstructing a police officer, MICH. COMP. LAWS § 750.81 d(2), unlawfully driving away an automobile ("UDAA"), MICH. COMP. LAWS § 750.413, and second-degree retail fraud, MICH. COMP. LAWS § 750.356d, following a jury trial in the Wayne County

Circuit Court.  In 2011, Petitioner was sentenced to concurrent terms of 15 to 30 years imprisonment on the carjacking conviction, three to five years imprisonment on the attempting to disarm a peace officer conviction, and 171 days in jail on each of the other convictions. Petitioner challenges his convictions on the basis of double jeopardy and insufficient evidence, and challenges his sentences as unconstitutional. For the reasons set forth below, the petition will be denied and the request for a certificate of appealability and for leave to proceed *in forma pauperis* on appeal are also denied.

## I.

Petitioner's convictions arise from a shoplifting incident at a Walmart store in Dearborn, Michigan on May 3, 2011, that spiraled out of control.  The Court adopts the summary of the trial testimony set forth by Petitioner to the extent it is consistent with the record.  Those facts are as follows:

> Martha Dixon testified that on May 3, 2011, she was employed at the Walmart store in Dearborn where she supervised the electronics department. (T 10-03-11 pp 85-86) She stated that she observed the Petitioner enter her department and place between fifty and sixty camera memory chips into a bag that was also being sold at the store. (T 10-03-11 pp 86-87) She said that he left the department, passing a cash register there,

without paying for the merchandise. (T 10-03-11 pp 89-90) She said that she told another employee to call the loss prevention department. (T 10-03-11 p 90)

Scott Marcaetti testified that about 6:00 pm on May 3, 2011, he was working as an LPO at the Walmart store in Dearborn when he received a call from an employee in the electronics department reporting a man taking merchandise without paying for it. (T 10-03-11 pp 93-94) He stated that he observed the Petitioner, who fit the description he received, in the parking lot where he dropped a bag containing the stolen memory cards. (T 10-03-11 p 95) He said that he recovered the bag and contacted the DPD. (T 10-03-11 pp 95-96) He said that the value of the merchandise was about $530.00. (T 10-03-11 pp 99-100)

Mr. Marcaetti testified that he followed the Petitioner across Ford Rd. to the Best Buy store parking lot where he lost sight of him. (T 10-03-11 p 97) He stated that he then saw the police arrive and his partner, Andrew Suchan, speak with the officers. (T 10-03-11 p 97) He said that they all moved around a corner and out of his line of sight. (T 10-03-11 pp 99-98) He said that when he turned that same corner he saw a police car with the door open and two officers trying to remove someone from the vehicle. (T 10-03-11 pp 98-99) He said that he then saw the vehicle speed forward and crash into a gazebo outside of Ollie's Restaurant. (T 10-03-11 p 99)

Andrew Suchan testified that on May 3, 2011, he was working at the Walmart store in Dearborn as a LPO when he was notified about a suspect in the electronics department loading memory cards into a purse. (T 10-03-11 pp 103-105) He stated that he located the Petitioner with a security camera and saw

him putting the cards into the bag. (T 10-03-11 pp 104-105) He said that he saw the defendant leave the store without paying for the merchandise and that he and his partner, Scott Marcaetti, followed him outside. (T 10-03-11 pp 105-106) He said that the Petitioner dropped the bag and crossed Ford Rd. (T 10-03-11 p 107)

Mr. Suchan testified that he followed the Petitioner into the Best Buy parking lot where he lost sight of him. (T 10-03-11 p 109) He stated that Sgt. White of the DPD pulled up and that he told him what had happened. (T 10-03-11 p 110) He said that when he saw the Petitioner again, Sgt. White was out of his vehicle. (T 10-03-11 p 114) He said that the Petitioner entered the police car just as he tried to apprehend him. (T 10-03-11 p 115) He said that the Petitioner was in the driver's seat positioned to drive away when he, Mr. Suchan, got into the vehicle and straddled the Petitioner face to face. (T 10-03-11 p 117) He said that he grabbed the Petitioner's wrist to stop him from driving away. (T 10-03-11 p 118)

Mr. Suchan testified that Sgt. White returned to the vehicle and was entering it through the passenger side window. (T 10-03-11 p 119) He said that the Petitioner swung and hit Sgt. White in the face with his right hand. (T 10-03-11 pp 119-120) He said that the Petitioner put the car in gear. (T 10-03-11 p 121) He said that he grabbed the steering wheel and pulled it to the side to make it turn in a circle. (T 10-03-11 pp 122-123) He said that the vehicle drove into the gazebo at Ollie's Restaurant. (T 10-03-11 p 123) He said that once the vehicle stopped, he got out of it and then helped the officers remove the Petitioner. (T 10-03-11 pp 123-124)

Sgt. Stephen White of the DPD testified that on May 3, 2011 he was working as a patrol supervisor on the afternoon shift when he responded to a shoplifting complaint and went to the Best Buy parking lot on Ford Rd. (T 10-03-11 pp 136-137) He stated that the Petitioner was pointed out to him by a store patron and that he followed the then running Petitioner in his vehicle for a short distance before he stopped and began to pursue him on foot. (T 10-03-11 pp 139-141) He said that he chased the Petitioner who then doubled back and ran toward his patrol vehicle. (T 10-03-11 p 142)

Sgt. White testified that he ran back to his police car where he saw the Petitioner in the driver's seat. (T 10-03-11 p 144) He stated that Mr. Suchan was straddling him on the seat and that he, Sgt. White, attempted to climb through the passenger door window to reach and subdue the Petitioner. (T 10-03-11 pp 144-145) He said that the Petitioner was punching him with his left hand and grabbing for the gear shift with his right hand. (T 10-03-11 p 145) He said that the Petitioner was revving the engine. (T 10-03-11 p 145) He said that he repeatedly punched the Petitioner in the face. (T 10-03-11 p 145)

Sgt. White testified that the Petitioner put the vehicle into gear and that it crashed into the gazebo. (T 10-03-11 p 142) He stated that then he, Mr. Suchan and the Petitioner all tumbled out of the vehicle and on to the parking lot. (T 10-03-11 p 147) He said that officer Whitcomb came up and assisted in bringing the Petitioner under control. (T 10-03-11 pp 147-149) He said that the Petitioner resisted their efforts and that he, Sgt. White, sustained some injuries. (T 10-03-11 p 148) He said that the Petitioner attempted to grab his gun from his holster during the struggle. (T 10-03-11 p 148)

During cross examination, Sgt. White testified that the patrol vehicle traveled a distance of about thirty feet in a straight line before it struck the gazebo. (T 10-03-11 p 157) He stated that Mr. Suchan could not grab or turn the steering wheel because he was facing the Petitioner and struggling with him. (T 10-03-11 p 158) He said that the vehicle did not move to the left, to the right or in a circle. (T 10-03-11 p 158) He said that the Petitioner put the car in gear with his right hand after he reached for his. Sgt. White's gun. (T 10-03-11 p 159)

Officer Nicholas Whitcomb, of the DPD, testified that on May 3, 2011, he was working uniform patrol when he was dispatched to the Walmart store on a theft report. (T 10-03-11 p 176) He stated that he first observed the Petitioner get up from under a parked car and begin running. (T 10-03-11 p 177) He said that he saw the Petitioner run toward Sgt. White's patrol vehicle and get in. (T 10-03-11 p 178) He said that he ran to the driver's door and began to punch the Petitioner in the face as hard as he could. (T 10-03-11 p 179) He said that the engine was revving and that the defendant was trying to put the car into gear. (T 10-03-11 pp 178-179)

Officer Whitcomb testified that the car did go into gear and took off. (T 10-03-11 p 182) He said that he was tossed out of the vehicle and landed on the ground. (T 10-03-11 p 182) He said that he sustained some scrapes and cuts to his knees and that he was treated for those injuries at Oakwood Hospital. (T 10-03-11 pp 182-183) He said that the Petitioner continued to fight when the vehicle stopped and he was being removed from it. (T 10-03-11 p 185) He said that he did not see the Petitioner try to grab for any officer's gun. (T 10-03-11 p 185)

During cross examination, Officer Whitcomb testified that he did not recall seeing Sgt. White leaning into the vehicle from the passenger side. (T 10-03-11 p 190) He said that he did not see Mr. Suchan turn the steering wheel. (T 10-03-11 p 191)

The People rested at the conclusion of Officer Whitcomb's testimony. (T 10-03-11 p 193) The Petitioner did not testify. (T 10-03-11 p 197) The Petitioner did not present any witnesses or other evidence. (T 10-03-11 p 204).

Pet. Brief, pp. 2-5.

At the close of trial, the court dismissed a malicious destruction of property charge and the jury acquitted Petitioner of unarmed robbery, but found him guilty of the other charges. The trial court subsequently sentenced him to the terms of imprisonment previously set forth.

Following sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals presenting the same claims presented on habeas review. The Michigan Court of Appeals denied relief on those claims and affirmed Petitioner's convictions and sentences. *People v. Thompson*, No. 307449, 2013 WL 2420964 (Mich. Ct. App. June 4, 2013) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Thompson*, 495 Mich. 875 (2013).

Petitioner thereafter filed this habeas petition, raising the following claims:

I.    The convictions for carjacking and UDAA constitute a violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

II.    There was insufficient evidence on the element of larceny of a motor vehicle to support the jury's verdict of guilty beyond a reasonable doubt for the count of carjacking, constituting a denial of due process of law guaranteed by the Fifth Amendment to the United States Constitution.

III.    The 15 to 30 year sentence for carjacking constitutes a violation of the guarantee against cruel and unusual punishment provided by the United States and Michigan Constitutions.

Respondent filed an answer to the petition contending that it should be denied because the claims lack merit and/or are procedurally defaulted.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides the standard of review for federal habeas cases brought by state prisoners. The AEDPA provides in relevant part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on

the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

A state court's decision is contrary to clearly established law "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S.

510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *Bell*, 535 U.S. at 694.  In order for a federal court to find a state court's application of Supreme Court precedent unreasonable, the state court's decision "must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations omitted).

The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'"  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7).  A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 586 U.S. 86, 88 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id*. (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).  Under § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask

10

whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. It also "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Additionally, while the requirements of "clearly

established law" are determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue.  *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Finally, a state court's factual determinations are presumed correct on federal habeas review.  28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

## III.

As an initial matter, Respondent contends that Petitioner's sentencing claim is barred by procedural default because he failed to make proper objections at sentencing and the Michigan Court of Appeals relied upon that failure to deny relief on direct appeal.  On habeas review, however, federal courts "are not required to address a procedural-default issue before deciding against the petitioner on the

merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Such is the case here. The substantive claim is more readily decided on the merits. Accordingly, the Court need not address whether that claim is procedurally defaulted and will proceed to the merits of Petitioner's claims.

## IV.

### A.

Petitioner first asserts that he is entitled to habeas relief because his convictions for both carjacking and UDAA violate his constitutional right to be free from double jeopardy. The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Double Jeopardy Clause, applicable to the states through the Due Process Clause of the Fourteenth Amendment,

*see Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides three basic protections:  "[It] protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.   And it protects against multiple punishments for the same offense."  *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted).  "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense."  *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)).

Federal courts determine whether two crimes constitute the same offense for double jeopardy purposes by applying the same-element test originally set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  *See United States v. Dixon*, 509 U.S. 688, 696 (1993); *Murr v. United States*, 200 F.3d 895, 900 (6th Cir. 2000).  This test "inquires whether each offense contains an element not contained in the other; if not, they are the same offense and double jeopardy bars additional punishment and successive prosecution."  *Dixon*, 509 U.S. at 696; *Blockburger*, 284 U.S. at 304.  However, in the context of multiple punishments, the Double Jeopardy Clause does not prohibit a state

14

from defining one act of conduct to constitute two separate criminal offenses.   As the Supreme Court has explained, "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature . . ., the question under the Double Jeopardy Clause of whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984). Thus, when "a legislature specifically authorizes cumulative punishment under two statutes for the same conduct, regardless of whether those two statutes proscribe the 'same' conduct . . . , a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).  In determining whether the Michigan legislature intended to authorize separate punishments, a federal court must accept the state court's interpretation of the legislative intent. *Id*. at 368.

The Michigan Court of Appeals considered this claim on direct appeal and denied relief.  The court explained:

> The convictions at issue in defendant's double jeopardy claim are carjacking and UDAA, and this same question was recently answered by this Court in *People v. Cain*, 299 Mich

App 27; —— NW2d —— (2012). This analysis will follow this Court's recent decision in *Cain*.

The carjacking statute, MCL 750.529a, provides:

> (1) A person who is in the course of committing a larceny of a motor vehicle uses force or violence or the threat of force or violence ... is guilty of carjacking ...

> (2) As used in this section, "in the course of committing a larceny of a motor vehicle" includes acts that occur in an attempt to commit the larceny or during commission of the larceny.... [Emphasis added.]

The UDAA statute, MCL 750.413, provides:

> Any person who shall, willfully and without authority, take possession of and drive or take away ... any motor vehicle, belonging to another, shall be guilty of a felony.... [Emphasis added.]

Analyzing these two statutes under the same-elements test, this Court stated:

> It is clear that a carjacking conviction requires proof of the use of force or violence, or the threat of force or violence, while a UDAA conviction does not. The issue is whether UDAA contains an element that carjacking does not. [*Cain*, 299 Mich App at 42.]

16

> This Court proceeded in its analysis: "UDAA contains an element that carjacking does not—the completed larceny of a motor vehicle—and the double jeopardy same-elements test is not violated." *Id.* at 44. Ultimately, this Court held that convictions for both carjacking and UDAA do not violate the Double Jeopardy Clause. *Id.* Similarly, we conclude that defendant's convictions do not violate the Double Jeopardy Clause of the United States Constitution.

*Thompson*, 2013 WL 2420964 at *1.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Applying the *Blockburger* test and considering the plain language of the state statutes, it is evident that the offenses of carjacking and UDAA each contain an element that the other does not. Carjacking requires proof of the use of force or violence or the threat of force or violence, and UDAA does not. UDAA requires proof that the defendant moved the vehicle without the owner's consent, and carjacking does not. *See People v. Cain*, 485 Mich. 874, 874-75 (2013) (clarifying that UDAA only requires driving or taking away a motor vehicle without the owner's consent and does not require a completed larceny). Because the statutes at issue contain distinct elements, Petitioner's

convictions for both carjacking and UDAA do not violate double jeopardy principles.  Habeas relief is not available on this claim.

## B.

Petitioner next asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his carjacking conviction.  The Federal Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  The standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  "The *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'"  *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16).  A federal court must also view this standard through the

framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).

Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *See Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, "[t]he mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

Applying the *Jackson* standard, the Michigan Court of Appeals denied relief on this claim. The court explained:

> The prosecution presented sufficient evidence on the element
> of larceny of a vehicle in order to prove, beyond a reasonable
> doubt, that defendant was guilty of carjacking. In 2004,

> [l]ike the armed robbery statute, the Legislature amended the carjacking statute to describe the offense as one that occurs during the course of committing a larceny, with that phrase defined as acts that occur in an attempt to commit the larceny. In *People v. Williams*, 288 Mich App 67, 79–80; 792 NW2d 384 (2010), which was affirmed by *Williams*, 491 Mich. at 184, this Court emphasized the almost identical language of the robbery and carjacking statutes. This Court observed that the revised statute was intended to include attempts to commit the designated crime. As the Court ruled in the Williams opinions, we also hold that, as amended, a carjacking conviction does not require a completed larceny. [*Cain*, 299 Mich App at 44 (emphasis added) (internal quotations and citations omitted).]

Since the amendment, though, this Court has continually cited case law decided prior to the amendment to establish the elements of carjacking. In particular, this Court has relied on the recitation of the elements enunciated in *People v. Davenport*, 230 Mich App 577; 583 NW2d 919 (1998):

> [I]n order to sustain a carjacking conviction, the prosecution must prove (1) that the defendant took a motor vehicle from another person, (2) that the defendant did so in the presence of that person, a passenger, or any other person in lawful possession of the motor vehicle, and (3) that the defendant did so either by force or violence, by threat of force or violence, or by putting the other person in fear. [*Id.* at 579.]

Additionally, the pre-amendment carjacking statute, which required proof that someone "robs, steals, or takes a motor vehicle," 1994 PA 191, has since been amended to require proof that a person engaged in the "commission of a larceny." 2004 PA 128. Thus, this Court's pre-amendment holding that carjacking is not a specific intent crime, *Davenport*, 230 Mich App at 578, is no longer accurate. Conversely, larceny "is a specific intent crime for which the prosecution must establish that the defendant intended to permanently deprive the owner of property." *People v. Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010).[FN1] The intent to permanently deprive a person of his property is a critical element of larceny. *Cain*, 238 Mich App at 123–124. In *Harverson*, this Court examined the unarmed robbery statute, which, like carjacking, requires proof of the commission of a larceny. *Harverson*, 291 Mich App at 177–178. The "intent to permanently deprive" is not "literal." *Id*. at 178. "Rather, the intent to permanently deprive includes the retention of property without the purpose to return it within a reasonable time...." *Id*.

> FN1. Although *Harverson* does not interpret the carjacking statute, the Court in *Harverson* did interpret the unarmed robbery statute, which also requires proof that a defendant was in the course of committing a larceny. *Id*. at 177; *see also* MCL 750.530. In *Cain*, this Court applied the Supreme Court's interpretation of the robbery statute in Williams to the carjacking statute. *Cain*, 299 Mich App at 44.

Since the amendment of the carjacking statute, this Court has not published a decision which articulates the elements of

carjacking. Instead, the published decisions merely quote the statute without breaking the statute down into elements. *See Cain*, 299 Mich App at 42. In *Williams*, 288 Mich App at 85, this Court provided that "[c]ourts must proceed with greater caution in their use and reliance on prior published opinions delineating the elements of armed robbery, which preceded the revision of MCL 750.529." *Id*. at 85. "Clearly, the Legislature has enacted changes affecting the elements comprising this offense [robbery] and it is our responsibility to correctly apply the revised language of MCL 750.529 to the particular evidence and facts of each individual case." *Id*.

Applying this Court's holding of *Williams* to this case, we conclude that *Davenport's* articulation of the elements is still relevant and instructive. However, the first element of a carjacking must require exactly what the amended carjacking statute requires: proof that defendant was "in the course of committing a larceny of a motor vehicle." MCL 750.529a. Specifically, the statute defines "in the course of committing a larceny" to include:

> acts that occur in an attempt to commit a larceny, or during the commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the motor vehicle. [MCL 750.529a(2).]

Additionally, the remaining elements from *Davenport* are still applicable:

> (2) that the defendant did so in the presence of that person, a passenger, or any other person in lawful possession of the motor vehicle, and (3) that the

22

> defendant did so either by force or violence, by threat of force or violence, or by putting the other person in fear. [*Davenport*, 230 Mich App at 579.]

Sufficient evidence was presented on all three elements of carjacking, and the prosecution showed sufficient evidence that defendant had the intent to deprive Dearborn Police Sergeant Stephen White of the cruiser. First, sufficient evidence was proffered that defendant took the police cruiser. Defendant entered the cruiser, put the cruiser into drive, and touched the gas pedal with his foot. Thus, evidence was presented that defendant was in the process of committing a larceny. Additionally, the facts that defendant knew the cruiser was empty and entered it, and fought White while he attempted to drive the cruiser away, showed that he had the intent to deprive White of the cruiser. Second, the police cruiser was being driven by White, who as a Dearborn Police Sergeant, had the legal authority to possess the vehicle. Defendant took the car while White was hanging out of the passenger side window of the vehicle. Thus, the vehicle was taken in the presence of the person who had lawful possession of the vehicle. Third, defendant hit White's face during his taking of the vehicle and attempted to obtain possession of White's gun. Thus, defendant took the cruiser from White while using force. Therefore, the prosecution presented sufficient evidence to find defendant guilty of carjacking.

*Thompson*, 2013 WL 2420964 at *2-3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The police testimony at trial established that Petitioner was in the

process of committing a larceny when he got into the police car, hit the gas pedal, and attempted to flee the scene, that Petitioner intended to deprive the police of the car and not return it, that Petitioner took such action in the presence of the police officer who was in charge of the vehicle, and that Petitioner used force and fought the police officer while taking and driving the police car.  Such testimony was sufficient to establish that Petitioner committed the crime of carjacking as defined by Michigan law.

Petitioner challenges the jury's evaluation of the evidence and the inferences the jury drew from the testimony at trial.  However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts.  *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").  The jury's verdict and the Michigan Court of Appeals' decision affirming that verdict were reasonable.  The evidence

at trial, viewed in a light most favorable to the prosecution, established Petitioner's guilt of the carjacking beyond a reasonable doubt. Habeas relief is not warranted on this claim.

## C.

Finally, Petitioner asserts that he is entitled to habeas relief because his 15 to 30 year sentence for carjacking constitutes cruel and unusual punishment under the Michigan and Federal Constitutions. As an initial matter, the Court notes that Petitioner's carjacking sentence is within the statutory maximum of life imprisonment. MICH. COMP. LAWS § 750.529a. A sentence within the statutory limits is generally not subject to federal habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). Claims which arise out of a state court's sentencing decision are not cognizable upon habeas review unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). Petitioner makes no such showing.

In any event, the Michigan Court of Appeals considered this claim on direct appeal and denied relief. *Thompson*, 2013 WL 2420964 at *4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner asserts that his carjacking sentence violates the Michigan Constitution's prohibition against cruel and unusual punishment. This claim, however, is not cognizable on federal habeas review because it is a state law claim. *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Broadnax v. Rapelje*, No. 2:08-CV-12158, 2010 WL 1880922, *3 (E.D. Mich. May 11, 2010); *Baker v. McKee*, No. 06-CV-12860, 2009 WL 1269628, *6 (E.D. Mich. April 30, 2009). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v.* Jago, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief is not available for perceived errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Petitioner thus fails to state a claim upon which relief may be granted on this issue.

Petitioner also asserts that his carjacking sentence violates the United States Constitution's prohibition against cruel and unusual punishment. He is not entitled to relief on this Eighth Amendment

claim.   The United States Constitution does not require strict proportionality between a crime and its punishment.   *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991).   A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"   *Austin*, 213 F.3d at 302 (internal citation omitted).   Petitioner's sentence, while lengthy, is within the state sentencing guidelines and the statutory maximum.   The trial court acted within its discretion in imposing Petitioner's carjacking sentence and there is no extreme disparity between his crime and his sentence so as to offend the Eighth Amendment.   Petitioner has failed to establish that his carjacking sentence is unconstitutional.   Habeas relief is not warranted on this claim.

<p style="text-align:center">V.</p>

For the reasons set forth above, the Court concludes that Petitioner is not entitled to federal habeas relief.   The Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal this decision, a certificate of appealability must issue.   *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).   A certificate of appealability may issue "only if the applicant has

<p style="text-align:center">27</p>

made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right in this petition. Accordingly, the Court **DENIES** a certificate of appealability. The Court also **DENIES** Petitioner leave to proceed *in forma pauperis* on appeal as an appeal cannot be taken in good faith. *See* FED. R. APP. P. 24(a).

**IT IS SO ORDERED.**

Dated: June 16, 2015                    s/Judith E. Levy
Ann Arbor, Michigan                    JUDITH E. LEVY
                                       United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 16, 2015.


s/Felicia M. Moses
FELICIA M. MOSES
Case Manager